## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE URBAN INSTITUTE,

              Plaintiff,

              v.

FINCON SERVICES, et al.,

              Defendants.

**Civil Action 09-00572  (HHK)**

### MEMORANDUM OPINION

The Urban Institute ("Institute") brings this action against FINCON Services, Shahid Yusaf, and Global Investment Advisors d/b/a FINCON Service Inc. (collectively "defendants"). The case arises out of FINCON's accusation, made in a suit brought in Pakistan, that the Institute infringed on FINCON's copyright in creating its Financial Management Information System ("FMIS") software.  The Institute seeks a declaration that it owns all right, title, and interest in the FMIS copyright and brings claims of violation of the Federal Trademark Act, 15 U.S.C. § 1125(a) ("Lanham Act"), tortious interference with contractual relations, abuse of process, trade libel, and unfair competition.  Before the Court is defendants' motion to dismiss [#5], in which defendants primarily argue that this Court does not have personal jurisdiction over them.  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion shall be granted.

### I. BACKGROUND

FINCON Services ("FINCON") is a corporation that does business in several countries, including the United States, Canada, and Pakistan.  FINCON's office in the United States is located in California.  Shahid Yusaf is the President of FINCON.  According to defendants,

Global Investment Advisors, Inc. ("GIA") is a "capital markets advisory firm" with its headquarters in California, and its President is Roger Nye.  Defs.' Mot. to Dismiss at 5-6.  The Institute's complaint alleges that "the acts and omissions forming the basis of this Complaint have . . . been committed, authorized, directed, and/or approved by each of the Defendants, acting as agents, alter egos and proxies of one another."  Compl. ¶ 18.[1]

The Institute is a nonprofit research organization headquartered in Washington, D.C.  In 2006, the U.S. Agency for International Development ("USAID") awarded a contract to the Institute for a project called "Districts That Work" ("DTW project").  This project involved "the development of skills and tools for effective governance in thirty selected districts in Pakistan." *Id.* ¶ 30.  In order to complete the DTW project, it was necessary to develop "management information software" that is "used to facilitate the collection, processing, storage, and dissemination of data."  *Id.* ¶ 22.

According to the complaint, the Institute engaged in discussion with defendants about the possibility of contracting with them for the creation of management information software for the DTW project.  On May 5, 2008, however, the Institute instead hired an individual, Ghulam Mustafa Kahn, to develop software for the DTW project as an independent consultant.  Kahn, an expert in management information systems, had previously worked for FINCON and was again employed by FINCON just before agreeing to assist the Institute with the DTW project.

Kahn and two assistants, working in Pakistan, created software for the Institute referred to by the parties as the Financial Management Information System ("FMIS").  The Institute

---

[1]     All citations herein to the Complaint refer to the Institute's First Amended Complaint.

2

registered FMIS with the U.S. Copyright Office as United States Copyright Registration No. TX-6-907-252.[2]

In February 2009, FINCON sent a letter to the Institute maintaining that Khan copied features of its software in creating FMIS, demanding that the Institute stop using FMIS, and seeking five million dollars in damages for "contravention of the Intellectual Property Rights" of defendants. *Id.* ¶ 50. Later that month, FINCON filed a copyright infringement lawsuit against the Institute and Kahn in the District Court of Islamabad, Pakistan. The Institute asserts that FMIS "contains new and original features developed independently and exclusively by Kahn" and his two assistants. *Id.* ¶ 41. The Institute contends that FINCON's allegations are "fabricated, frivolous and, on information and belief, leveled against [the Institute] for the ulterior purpose of coercing [the Institute] and USAID into contractual relationships with Defendants, damaging the reputation of [the Institute] and USAID, and harming the image of USAID in the United States and Pakistan." *Id.* ¶ 53.

The Institute also alleges that defendants anonymously provided false information regarding the alleged copyright infringement to a Pakistani newspaper and that they "instigated a baseless criminal investigation against Khan for the purpose of punishing Khan" for working for the Institute. *Id.* ¶ 64.[3]

---

[2]     Kahn's contract with the Institute included a clause stating that Kahn "transfers all rights, title and interest worldwide to any . . . written product, data, or any other information or materials [collected or generated in performing work under the contract] to the Urban Institute." Compl. ¶¶ 38-39.

[3]     Defendants offer a different version of events, but the disputed facts are relevant to the merits of the Institute's claims rather than the jurisdictional questions at issue here.

The Institute's complaint seeks a declaration that it is the "sole and exclusive owner of U.S. Copyright Registration No. TX 6-907-252" (Count I). *Id.* ¶ 70. It also brings claims of false representation and false designation of origin under the Lanham Act (Count II), tortious interference with contractual relations (Count III), abuse of process (Count IV), trade libel (Count V), and common law unfair competition (Count VI).

## II. ANALYSIS

Defendants seek dismissal of this action because, they argue, the Court may not exercise personal jurisdiction over them.[4] Rule 12(b)(2) of the Federal Rules of Civil Procedure provides that a court may dismiss a complaint on this ground.

### A. Law of Personal Jurisdiction

The plaintiff bears the burden of making a prima facie showing that a court has personal jurisdiction over the defendant. *Naegele v. Albers*, 355 F. Supp. 2d 129, 136 (D.D.C. 2005) (citing *Second Amendment Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001)). To make such a showing, the plaintiff is not required to adduce evidence that meets the standards of admissibility reserved for summary judgment and trial; rather, she may rest her arguments on the pleadings, "bolstered by such affidavits and other written materials as [she] can otherwise obtain." *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).[5] In determining whether

---

[4]     In the alternative, defendants assert that the case should be dismissed based on the doctrine of *forum non conveniens*; they also argue that if the Court retains the action, certain counts should nonetheless be dismissed on substantive grounds. Because the Court dismisses the case for lack of personal jurisdiction over defendants, this opinion does not address these alternative arguments.

[5]     Relatedly, it is appropriate for the Court to take evidence from outside the pleadings into consideration in considering a motion to dismiss for lack of jurisdiction. *See Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 6 (D.D.C. 2009)

personal jurisdiction exists, the court should resolve factual disputes in the plaintiff's favor,

*Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004) (citing *Reuber v. United States*, 750

F.2d 1039, 1052 (D.C. Cir. 1984)), but a plaintiff's "conclusory statements . . . are not enough"

to meet her burden.  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C.

Cir. 2000).

The jurisdictional reach of a federal court is the same as that of a state or local court of

general jurisdiction in the forum where the federal court sits.  *See* Fed. R. Civ. P. 4(k)(1)(A);

*Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  Therefore, the Court may exercise general or

specific personal jurisdiction over a defendant.  Pursuant to D.C. Code § 13-334(a), the Court

may exercise general personal jurisdiction over a defendant who is "doing business in the

District."  D.C. Code § 13-334(a).[6]  The Court may exercise specific personal jurisdiction over a

non-resident if jurisdiction is in accordance with the District of Columbia's long-arm statute.

D.C. Code § 13-423; *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  Relevant here

is the provision of that statute permitting the Court to exercise jurisdiction over a person who

"cause[s] tortious injury in the District of Columbia by an act or omission outside the District of

Columbia if [s]he regularly does or solicits business, engages in any other persistent course of

---

("When considering personal jurisdiction . . . the court 'may receive and weigh affidavits and
other relevant matter to assist in determining the jurisdictional facts.'" (quoting *D'Onofrio v.
SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008)).

[6]    On its face, this statutory provision appears to involve only service of process.  It
has been construed, however, to confer general jurisdiction under the long-arm statute.  *See
El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 673 n.7 (D.C. Cir. 1996) (noting that the D.C.
Court of Appeals has so construed section 13-334(a)).

conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia." D.C. Code § 13-423(a)(4).

In addition, a plaintiff asserting that the Court has personal jurisdiction over the named defendants must make a prima facie showing that the Court's exercise of jurisdiction satisfies the constitutional requirements of due process. *See* U.S. CONST. amends. V & XIV; *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Due process is satisfied where a plaintiff shows "minimum contacts" between the defendant and the forum, ensuring that "the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316. Under this standard, "the defendant's conduct and connection with the forum state [must be] such that [s]he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

**B.    This Court May Not Exercise Personal Jurisdiction Over These Defendants**

**1.    General jurisdiction**

In its opposition to defendants' motion to dismiss, the Institute alleges for the first time that this Court has general jurisdiction over defendants under D.C. Code § 13-334.[7] In support of the proposition that defendants were "doing business" in the District, the Institute points to FINCON's website, which lists the World Bank as a FINCON customer. The Institute apparently infers that because the World Bank is an important client to FINCON and because the World Bank has its headquarters in Washington, D.C., FINCON must do business in the District.

---

[7]    The Institute asserts that its failure to cite D.C. Code § 13-334 in its complaint is not significant because the allegations in the complaint establish the applicability of that statute and neither defendants nor the Court has been "misled" by the omission. Pl.'s Opp'n to Defs.' Mot. to Dismiss at 16 (quoting *El Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 673 (D.C. Cir. 1996)). Defendants do not contest this point.

In addition, the Institute asserts that "Fincon's Executive Director, Roger Nye, appeared at the offices of [the Institute]'s representative on February 26, 2008, to solicit a business relationship with [the Institute]."  Pl.'s Opp'n to Defs.' Mot. to Dismiss ("Pl.'s Opp'n") at 17 (citing Decl. of Charles Cadwell, Director of the Center on International Development and Governance at the Urban Institute ¶¶ 7-8 ("Cadwell Decl.")).  Because Nye, the "principal officer" of GIA, "held himself out as the Executive Director of Fincon," the Institute argues that defendants collectively had a presence in the District.  *Id.* (citing Cadwell Decl. ¶¶ 7-8).  Based on these allegations, the Institute contends that defendants have the "continuous and systemic general business contacts" necessary to support the exercise of general jurisdiction.  *Id.* (quoting *Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 416 (1984)).

In response, defendants argue that FINCON[8] was not "doing business" in the District.  As to the Institute's reliance on FINCON's listing the World Bank as a client, defendants assert that "FINCON did not have dealings in Washington, D.C. with the World Bank."  Defs.' Reply to Pl.'s Opp'n ("Defs.' Reply") at 3 (citing Supplemental Decl. of Shahid Yusaf ¶ 8 ("Supp. Yusaf Decl.")).  Specifically, defendants have submitted a declaration from Yusaf stating that FINCON has "been a contractor on only three contracts financed by the World Bank," of which two were based in Pakistan and the third in Bosnia and Herzegovina.  *Id.* at 3 (citing Supp. Yusaf Decl. at ¶ 8).  Defendants contend that the only contacts with the District relevant for assessing whether this Court has general jurisdiction over them are three trips Nye made on FINCON's behalf in

---

[8]        Defendants note that D.C. Code § 13-334 applies only to corporations and thus cannot be the basis for jurisdiction over Yusaf.

2008, none of which resulted in any business deals and which do not constitute "continuous and systematic" contacts.

Defendants have the better argument. The reach of section 13-334(a) "is co-extensive with the reach of constitutional due process." *FC Inv. Group LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (quoting *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 510 (D.C. Cir. 2002)) (internal quotation marks omitted). Consequently, for the Court to exercise general jurisdiction over a defendant, the defendant's "business contacts with the forum" must be "continuous and systematic," a requirement that imposes a "high bar" as compared to that necessary for the exercise of specific jurisdiction. *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 12 (D.D.C. 2009) (quoting *FC Inv. Group*, 529 F.3d at 1091-92; *D'Onofrio v. SFX Sports Group, Inc.*, 534 F. Supp. 2d 86, 90 (D.D.C. 2008)). The Court finds that the reference to the World Bank on FINCON's website has no bearing on this analysis; Yusaf's declaration demonstrates that FINCON's work for the World Bank does not reflect contacts with Washington, D.C. The contacts of which there is evidence—three unsuccessful trips to solicit business—are not sufficient to support the exercise of general jurisdiction. *Cf. Allen v. Russian Fed'n*, 522 F. Supp. 2d 167, 196-98 (D.D.C. 2007) (noting that "sporadic contacts" and "brief presence" in a forum do not suffice to support general jurisdiction (citing *Helicopteros Nacionales de Colom.*, 466 U.S. at 417-18)); *AGS Int'l Servs. S.A. v. Newmont USA Ltd.*, 346 F. Supp. 2d 64, 76-77 (D.D.C. 2004) (holding that fourteen trips to the District of Columbia over two years for meetings with a part owner of the defendant company regarding funding the company's mines do not constitute "continuous and systematic" contacts). Therefore, the Court concludes that it does not have general jurisdiction over any of the named defendants.

## 2.      Specific jurisdiction under the D.C. long-arm statute

The Institute asserts in the alternative that the Court has personal jurisdiction over all

defendants pursuant to the District's long-arm statute, D.C. Code § 13-423(a)(4),[9] "because

Defendants solicit business in the District of Columbia and have caused tortious injury against

[the Institute] in the District of Columbia." Compl. ¶ 6. Defendants argue that the requirements

of section 13-423(a)(4)—that a party have "cause[d] tortious injury in the District of Columbia

by an act or omission outside the District of Columbia if [s]he regularly does or solicits business,

[or] engages in any other persistent course of conduct . . . in the District of Columbia," D.C.

Code § 13-423(a)(4)—are not met as to any of them.[10]

### i.      Act or omission outside the District of Columbia

Defendants argue that because GIA was not involved in any of the activities that give rise

to the Institute's claims, the "act or omission" requirement of the long-arm statute is not met as to

GIA. Defendants assert, contrary to the "information and belief" cited in the Institute's

complaint, that "FINCON and GIA are not agents, alter egos and proxies of one another." Defs.'

Mot. to Dismiss at 19. Instead, defendants maintain that the relationship between these entities

consisted of a one-year agreement between them under which GIA assisted FINCON in securing

contracts with USAID in Pakistan. This assistance, defendants argue, did not include any

---

[9]      The complaint mistakenly cites D.C. Code § 13-423(a)(5), but it is clear that the Institute intended to cite D.C. Code § 13-423(a)(4).

[10]      The parties first dispute whether the Institute suffered an injury inside the District of Columbia. Because the Court rules that other essential requirements for jurisdiction pursuant to D.C. Code § 13-423(a)(4) are not satisfied, this opinion does not reach this issue.

involvement with the copyright infringement action in Pakistan or any publicity regarding that suit.  The Institute does not refute these assertions.

The Institute's confusion prior to filing its complaint is understandable; GIA's agreement with FINCON used the title "Executive Director" to describe GIA's relationship with FINCON from December 2007 to December 2008.  Defs.' Mot. to Dismiss, Ex. 3 ¶ 11 ("Nye Decl.").  In fact, however, according to a declaration defendants have submitted to the Court, Nye "was an unsalaried marketing advisor of FINCON, not an employee," and he took no actions on behalf of FINCON other than to attempt to solicit business for the company.  Nye Decl. ¶ 11-12, 16.  The Court must weigh the statements in this declaration against unsupported allegations in the complaint that GIA was involved in the actions that give rise to the Institute's claims, *see Exponential Biotherapies*, 638 F. Supp. 2d at 6, and can only conclude that the allegations on which the Institute relies as a basis for jurisdiction over GIA are incorrect.  Because GIA has committed no act or omission causing injury to the Institute, the Court does not have personal jurisdiction over GIA.

### ii.    Regularly does or solicits business

Next, defendants argue that they do not meet the requirement in D.C. Code § 13-423(a)(4) that the party over which jurisdiction is asserted "regularly does or solicits business" in the District.  They assert that GIA's three trips to the District to solicit business for FINCON, which are the only contacts FINCON has had with the District, "do not constitute the persistent course of conduct required to satisfy" D.C. Code § 13-423(a)(4).  Defs.' Mot. to Dismiss at 20.[11]

---

[11]    Defendants also make arguments regarding GIA's contacts to the District other than on behalf of FINCON.  Because the Court has already determined that it cannot exercise jurisdiction over GIA, those contacts are not relevant to this analysis and the Court need not resolve those arguments.

The Institute responds that under the long-arm statute, a defendant's tortious conduct targeted at a resident of the District need not be related to the defendant's soliciting or conducting business in the District.  Therefore, the Institute argues, this requirement is met for the reasons the Institute asserts the Court could exercise general jurisdiction: FINCON's web site lists the World Bank, located in the District, as a principal customer and Nye, "acting as the executive director of Fincon," met with the Institute in the District in February 2008.  Pl.'s Opp'n at 19.

The Court is unpersuaded by the Institute's arguments.  The "business done or persistent course of conduct" requirement of D.C. Code § 13-423(a)(4), often referred to as the "plus factor," "is satisfied by connections considerably less substantial than those it takes to establish general, all-purpose 'doing business.'"  *Crane v. Carr*, 814 F.2d 758, 763 (D.C. Cir. 1987)).  And the Institute is correct that such conduct need not be related to the actions comprising the basis of the suit.  *Etchebarne-Bourdin v. Radice*, 982 A.2d 752, 763 (D.C. 2009).  As explained above, however, the Court will not credit the Institute's unsupported allegations about inferences to be made from FINCON's website; the question, then, is whether three trips to the District of Columbia are sufficient to support the exercise of jurisdiction under this provision.  Although there is a "notable lack" of authority regarding what level of contact with the District suffices for purposes of this analysis, *Burman v. Phoenix Worldwide Industries, Inc.*, 437 F. Supp. 2d 142, 153 (D.D.C. 2006), the Court can only conclude that three trips for meetings at which no business was successfully conducted do not rise to the requisite level.  *Cf. id.* at 153-54 (declining to exercise jurisdiction under D.C. Code § 13-423(a)(4) where defendant had several clients in the District and had received revenue from those clients); *see also Crane*, 814 F.2d at

11

763 (explaining that section 13-423(a)(4) is meant to "filter out cases in which the inforum

impact is an isolated event and the defendant otherwise has no, or scant, affiliations with the

forum" and quoting *Steinberg v. International Criminal Police Org.*, 672 F.2d 927, 931 (D.C.

Cir. 1981), in which the court held that a "reasonable connection" between the defendant and the

forum was required).   Therefore, the Court concludes that there is no basis for personal

jurisdiction over the remaining defendants, FINCON and Yusaf.[12]

## C.   Jurisdictional Discovery is Not Warranted

The Institute argues that if the Court concludes that the allegations in its complaint and

opposition to defendants' motion are insufficient to support the exercise of personal jurisdiction,

the Court should order discovery regarding this issue rather than dismiss the case.   Defendants

respond that such discovery is appropriate only if a plaintiff "demonstrates that it can supplement

its jurisdictional allegations through discovery," and here, defendants have already submitted

detailed declarations that provide the relevant facts.   Defs.' Reply at 6-7.

The Court agrees with defendants.   Although discovery is generally to be "freely

permitted," jurisdictional discovery "is justified only if the plaintiff reasonably 'demonstrates that

it can supplement its jurisdictional allegations through discovery.'"   *Exponential Biotherapies*,

638 F. Supp. 2d at 11 (quoting *Kopff v. Battaglia*, 425 F. Supp. 2d 76, 89 (D.D.C. 2006)).   The

---

[12]      The Court further notes that even were FINCON's contacts sufficient to satisfy the
"plus factor" requirement, they are not sufficient to meet the burden imposed by the Due Process
Clause.   Three unsuccessful business trips do not support a conclusion that "the defendant [has]
purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus
invoking the benefits and protections of its laws," *Asahi Metal Indus. Co., Ltd. v. Super. Ct. of
Cal., Solano County*, 480 U.S. 102, 109 (1987) (quoting *Burger King Corp. v. Rudzewicz*, 471
U.S. 462, 475 (1985) (internal quotation mark omitted)), or that "the defendant's conduct and
connection with the forum State are such that [it] should reasonably anticipate being haled into
court there," *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Institute has not explained what information it seeks or why the declarations of Yusaf and Nye are insufficient to conduct the personal jurisdiction analysis here.  At oral argument on this motion, counsel for the Institute reiterated this request for jurisdictional discovery but again did not specify what information the Institute seeks that would in any way impact the Court's analysis of the jurisdictional issues.  The only specific discovery counsel sought was a deposition of Yusaf.  But Yusaf's declarations are already in the record, and their veracity is not contested. Therefore, the Court declines to permit discovery on this matter.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that defendants' motion to dismiss [#5] shall be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United States District Judge